**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION**

MICHAEL T. FLYNN,

Plaintiff,

v. Case No.: 8:23-cv-02501-VMC-UAM

FRED WELLMAN,

Defendant.

_______________________________/

**DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, JUDGMENT ON THE PLEADINGS, AND HIS MOTION FOR ATTORNEY FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP STATUTE**

COMES NOW, Defendant Fred Wellman ("Mr. Wellman"), by and through his undersigned counsel, and pursuant to Federal Rules of Procedure 12(b) and FL Stat. § 786.295, to file this memorandum of law in support of his Motion to Dismiss, or, in the alternative, Judgment on the Pleadings, and Motion for Attorney Fees and Costs under Florida's Anti-SLAPP Law.[1]

## MEMORANDUM OF LAW IN SUPPORT

## INTRODUCTION

On November 2, 2023, Plaintiff Michael T. Flynn ("Mr. Flynn") filed this lawsuit alleging two Counts: "Defamation" and "Defamation Per Se" (Count I) and "Injurious Falsehood" (Count II) against Mr. Wellman. Complaint, Dkt. 1.

---

[1] Mr. Wellman was granted permission by the Court to exceed the page limitations set by Local Rule 3.01(a) by up to 15 pages. Dkt. No. 30. This filing conforms with the authorized page limitation.

Mr. Flynn selectively describes his background in Paragraphs 10 – 17.[2] Regardless of the true background of Mr. Flynn, what cannot be disputed is that, as a matter of law, he is a public figure.

Some of the facts asserted in the Complaint for Mr. Wellman are inaccurate, but obviously are viewed as true for purposes of this Motion. Mr. Wellman was the former Executive Director of the Lincoln Project, Complaint, ¶18, a "policy and political expert" who graduated from West Point and served as an Army officer, *id*. at ¶23, appears "regularly in the media," broadcasts his "analysis on political topics" to hundreds of thousands of people, *id*. at ¶24 and at times is paid to do so. *Id*. at ¶25.

For informational background only, Mr. Wellman is a highly decorated 22-year Army combat veteran. Over his career in uniform, he served from the troop level to the Pentagon including combat tours in Operation Desert Storm and three deployments in Operation Iraqi Freedom as a combat helicopter pilot and spokesman. He retired as a Lt. Colonel with some of the highest awards in the military including multiple Air Medals, Bronze Star Medals, and the Legion of Merit. *See* "How a helicopter pilot carries lessons, regrets from Persian Gulf War," Stars & Stripes, February 20, 2016, at *https://www.stripes.com/news/how-a-helicopter-pilot-carries-lessons-regrets-from-persian-gulf-war-1.395253*.

---

[2] A more accurate and complete recitation of Mr. Flynn's background is detailed in Mr. Wellman's anti-SLAPP claim below.

Following military service, Mr. Wellman launched an award-winning veteran's advocacy firm that was instrumental in supporting companies and nonprofits fighting everything from veteran's homelessness to wounded warrior's healthcare for nearly a decade. When the COVID pandemic struck New York City he volunteered to travel there and served as the Administrative Chief of Staff for the New York Presbyterian Ryan F. Larkin Field Hospital staffed by special operations medical veterans, nurses, and doctors from across the country. *See* "Former Stafford Army Officer Helps Hospital on the Front Lines," Free Lance Star, April 17, 2020, at *https://fredericksburg.com/news/local/former-stafford-army-officer-helps-hospital-on-the-front-lines/article_60f18aa8-1c92-591a-abf1-6a73e34b13b9.html* (last accessed December 26, 2023).

He closed his firm and joined the Lincoln Project, first as the Senior Advisor for Veterans Affairs, and then as its Executive Director, until he left in Fall 2021. Today, as a representative of the media, he hosts a popular podcast and assists Democratic candidates and campaigns.

The basis of this lawsuit are three tweets on the Twitter (now "X") platform from nearly two years ago that read:

1. "He's a traitor. He's being paid by Putin. Stop pretending Flynn hasn't forsaken his oath to the nation for money." Complaint, ¶28.

2. "Mike Flynn is a foreign agent." *Id.* at ¶29.

3. "He's not a Putin apologist. He's a paid agent. Mike Flynn is a traitor and a bigot." *Id.* at ¶30.

Each one of the tweets retweeted someone else's tweet, which also quoted or reproduced statements Mr. Flynn himself made during media appearances. Because context matters, the exact images of the tweets are reproduced at Exhibit "1". *See also* Complaint, ¶¶28 – 30 (reproducing tweet images).

## ARGUMENT

### I. STANDARD OF REVIEW

"It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law." *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Thus, Florida law provides "the substantive law to the merits of [p]laintiff's defamation claim." *Michael Flynn v. CNN, Inc.*, 2023 U.S. Dist. LEXIS 165234, *10 (M.D. Fla. Mar. 17, 2023)(citation omitted).

#### A. Motion to Dismiss

In ruling on a Motion to Dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004)(citations omitted). Indeed, while "[s]pecific facts are not necessary," the

complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)(*per curiam*), *quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *see also Jackson*, 372 F.3d at 1262 ("conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal")(citations and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 679. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678, *quoting Twombly*, 550 U.S. at 570.

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Notably, when the well-

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not "show[n]" — "that the pleader is entitled to relief." *Id.* (citation omitted).

Of course, "the function of a motion to dismiss a complaint is to raise a question of law as to the sufficiency of the facts alleged to state a cause of action." *Hitt v. North Broward Hospital District*, 387 So. 2d 482, 483 (Fla. 4th DCA 1980). *See also Marshall County Bd. Of Educ. v. Marshall County Gas. Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993)("Dismissal is appropriate when it is clear the plaintiff can prove no set of facts in support of the claims in the complaint.").

**B. Motion for Judgment on the Pleadings**

If the Court finds the factual record sufficient to warrant denying dismissal under Rule 12(b)(6), it can, in the alternative, grant judgment on the pleadings for Mr. Wellman in reliance upon Rule 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." *See Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010). In determining whether a party is entitled to judgment on the pleadings, the court also must accept as true all material facts alleged in the non-moving party's pleading and view those facts in the light most favorable to the non-moving party. *See Perez v. Wells Fargo*,

774 F.3d 1329, 1335 (11th Cir. 2014); *see also Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)("A motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6).").

In a motion for judgment on the pleadings, as with a motion to dismiss for failure to state a claim, a court may consider an extrinsic document that is both undisputed and central to the claim at issue. *See Perez*, 774 F.3d at 1340 n.2; *see also Sprengle v. Smith Mar. Inc.*, 2023 U.S. Dist. LEXIS 36001, *22-*23 (M.D. Fla. Mar. 3, 2023)(clarifying extrinsic evidence must be referenced in complaint itself, be central to plaintiff's claim, and must be of unquestioned authenticity). Courts are particularly permitted to take judicial notice of newspapers and other publications for the limited purpose of determining what statements the document contain. *See Davis v. McKenzie*, 2017 U.S. Dist. LEXIS 183519, *12 (S.D. Fla. Nov. 3, 2017), *citing United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 n.4 (11th Cir. 2015).

## II. BASED ON MR. FLYNN'S COMPLAINT AND FLORIDA LAW, MR. WELLMAN IS A MEDIA DEFENDANT AND NEVER RECEIVED MANDATORY STATUTORY NOTICE WARRANTING DISMISSAL OF THE COMPLAINT

As an initial matter, Mr. Flynn did not comply with the statutory mandate applicable to bringing a defamation claim in the State of Florida. It is mandatory to provide five-day notice to a media defendant in advance of any defamation action. *See Barbuto v. Miami Herald Media Co.*, 2023 U.S. App. LEXIS 13707, *2

(11th Cir. Jun. 2, 2023), *citing* Fla. Stat. § 770.01. Indeed, the Complaint never states or alleges that any form of request for a retraction was made to Mr. Wellman prior to the initiation of this litigation. *See Deligdish v. Bender*, 2023 U.S. Dist. LEXIS 137103, *16-*17 (M.D. Fla. Aug. 7, 2023)(rejecting dismissal argument under Section 770.01 in light of factual claims in Complaint that some notification of defamatory nature of defendant's statements was conveyed by plaintiff).

Relying only upon the Complaint's factual descriptions of Mr. Wellman, he is a former Executive Director of a political action committee that created "virulently anti-Trump video advertisements", a "Beltway insider and savvy political operator with significant political connections", "appears regularly in the media to provide coverage and analysis on political topics", as well as "*broadcasting* to his over 289,500 followers on X." Complaint, ¶¶18, 20, 24 (emphasis added). *See https://twitter.com/FPWellman* (now at 315,558 followers) (last accessed on December 26, 2023). He is alleged to "land interviews and paid appearances" to *disseminate* information about "prominent individuals, such as [Mr.] Flynn". Complaint, ¶25.[3] While Mr. Flynn subjectively describes the disseminated information as "smears and lies", *id.*, others no doubt would characterize it as "fair comment" or "analytical criticism." *Comins v. VanVoorhis*, 135 So. 3d 545, 557 (Fla. 5th DCA 2014)(citation omitted).

[3] Mr. Wellman also regularly disseminates news and information on his "On Democracy" podcast, which can be found on multiple platforms, including *https://www.youtube.com/channel/UCBTQ3zC1b1LEosLEocu9MXQ* (last accessed December 22, 2023).

This language and these job descriptions, provided by Mr. Flynn himself, paint a picture in which Mr. Wellman qualifies under Florida law as a media defendant for purposes of the pre-suit notice requirement. *See Zelinka v. American Healthscan, Inc.*, 763 So.2d 1173, 1175 (Fla. 4th DCA 2000)(distinguishing media defendants as those "engaged in the dissemination of news and information through the news and broadcast media").

Fla. Stat. § 770.01 states:

> Before any civil action is brought for publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander, the plaintiff shall, at least 5 days before instituting such action, serve notice in writing on the defendant, specifying the article or broadcast and the statements therein which he or she alleges to be false and defamatory.

Mr. Wellman's tweets fall within "other medium". That the Internet constitutes "other medium" for the purposes of § 770.01 should be well-settled. *Five for Entertainment, S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1327 (S.D. Fla. 2012). "[I]t is vital that no unreasonable restraints be placed upon the working news reporter or the *editorial writer*." *Ross v. Gore*, 48 So. 2d 412, 415 (Fla. 1950)(emphasis added). By Mr. Flynn's own characterization of Mr. Wellman, this situation is similar to that determined in *Comins* where a blogger was held to qualify as a "media defendant". The defendant there engaged in disseminating commentary on a site that has:

> primarily an informational purpose, most commonly in an area of special interest, knowledge or expertise of the blogger, and which usually provides for public impact or feedback. In that sense, it appears clear that many blogs and bloggers will fall within the broad reach of

> "media," and, if accused of defamatory statements, will qualify as a "media defendant" for purposes of Florida's defamation law as discussed above.

*Comins*, 135 So. 3d at 559. Thus, the Court's finding that the "presuit notice requirement of section 770.01 applies to allegedly defamatory statements made in such a public medium the purpose of which is the free dissemination of news or analytical comment on matters of public concern, as suggested in *Ross*" is applicable in the present case as well, and Mr. Wellman should be considered a "media defendant" for purposes of Florida law. *Comins*, 135 So. 3d at 560.

Since the Complaint does not allege that Mr. Flynn, on his own or through counsel, ever notified Mr. Wellman in advance of this lawsuit that Mr. Flynn viewed Mr. Wellman's statements as defamatory or sought a retraction, as a pure procedural matter, this failure to satisfy Florida's pre-suit notice requirement mandates dismissal of this action.[4]

## III. MR. FLYNN'S LAWSUIT SHOULD BE DISMISSED AS A MATTER OF LAW

### A. Mr. Flynn Has Conceded He Is A Public Figure

Mr. Flynn is a public figure. Just one month ago, in ongoing defamation litigation that Mr. Flynn filed against two other defendants in the Circuit Court

[4] If it comes to pass that this Court ultimately permits Mr. Flynn to rectify this deficiency, Mr. Wellman reserves the right to raise (and will raise at that time) any media defendant-specific defenses that would be relevant to these claims in the context of an Amended Complaint. As that is not currently before this Court, Mr. Wellman will not waste this Court's time with elaboration of defenses that are premature.

of the Twelfth Judicial Circuit for Sarasota County, he "readily admits that he is a public figure."[5] *See Flynn v. Stewartson et al.*, Case No.: 2023 CA 004264 NC (Fla. 12th Cir. Ct. May 3, 2023).

A defendant cannot be held liable for defaming a public figure about a matter of public concern unless he is shown to have acted with actual malice. *Berisha v. Lawson*, 973 F.3d 1304, 1310 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 2424, 210 L. Ed. 2d 991 (2021). The U.S. Supreme Court stated in *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)(citations omitted):

> [s]peech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."

Determining whether a plaintiff is a public figure, who is subject to the actual malice analysis, "is a question of law for the court to decide." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). "An individual may qualify as a public figure either generally—that is one with such fame and notoriety that he will be a public figure in any case—or for only limited purposes, where the individual has thrust himself into a particular public controversy and thus must

[5] The concession, which was filed by the same attorneys representing him now, was contained in Mr. Flynn's Consolidated Opposition in Response to Defendant Wilson's Motion to Dismiss/For Summary Judgment and for Judicial Notice at 8 (filed November 29, 2023)(Filing #187039198). Because it is presumed Mr. Flynn's attorneys will ethically abide by this concession, a copy of the Opposition has not been attached but certainly will be should Mr. Flynn take a position materially different in his forthcoming response.

prove actual malice in regard to certain issues." *Berisha*, 973 F.3d at 1310 (internal quotation marks omitted).

As noted above, Mr. Flynn and his attorneys have already conceded he is a public figure. In any event, Mr. Flynn's own factual statements in his Complaint sufficiently and independently demonstrate he qualifies as a public figure. He notes his previous service as the Director of the Defense Intelligence Agency ("DIA"), his work as a foreign policy advisor to Donald J. Trump's presidential campaign in 2016, serving as the National Security Advisor to President Trump, his establishment of a "bi-partisan election integrity initiative called the 'The America Project'", and his public remarks regarding the ongoing conflict in Ukraine. *See* Complaint, ¶¶10-17.

With that said, this Court can take judicial notice of other non-contested facts, *Perez*, 774 F.3d at 1340 n.2, that further demonstrate Mr. Flynn is a public figure. These include:

- He served as DIA's Director from 2012 until he was *fired* by then President Barack Obama in 2014, a year before his term was to have ended. *See* "Head of Pentagon intelligence agency forced out, officials say," Washington Post, April 30, 2014, at *https://www.washingtonpost.com/world/national-security/head-of-pentagon-intelligence-agency-forced-out-officials-say/2014/04/30/ec15a366-d09d-11e3-9e25-188ebe1fa93b_story.html* (last accessed December 26, 2023);

- During his 2016 security clearance renewal, Mr. Flynn withheld from DIA the fact he had accepted nearly $34,000 from a Russian State media outlet. *See* "Flynn Never Told DIA That Russians Paid Him, Say Officials," NBC News, May 8, 2017, at *https://www.nbcnews.com/news/us-news/flynn-never-told-dia-russians-paid-him-say-officials-n756421* (last accessed December 26, 2023);

- While Mr. Flynn notes he served as former President Donald J. Trump's first National Security Advisor, Complaint, ¶13, he fails to disclose he was asked to resign, i.e., *fired*, after only twenty-three days for failing to disclose unauthorized contacts and "incomplete information" regarding his discussions with the Russian's Ambassador to the United States. *See* "Flynn, fired once by a president, now removed by another," Associated Press, February 14, 2017, at *https://apnews.com/article/ce90066b4e20483da79adf21910da0c7* (last accessed December 26, 2023);

- On December 1, 2017, Mr. Flynn was charged by the U.S. Department of Justice of making "materially false statements and omissions" during an interview with the Federal Bureau of Investigation regarding his contacts with Russian Government officials. *See United Stated v. Flynn*, Case 1:17-cr-00232-RC (Dkt. 4), at *https://www.justice.gov/file/1015126/download* (last accessed December 26, 2023). He pled guilty that same day. *See* "Michael Flynn pleads guilty to lying to FBI on contacts with Russian ambassador," Washington, Post, December 1, 2017, at *https://www.washingtonpost.com/politics/michael-flynn-charged-with-making-false-statement-to-the-fbi/2017/12/01/e03a6c48-d6a2-11e7-9461-ba77d604373d _ story.html* (last accessed December 26, 2023).

- The Honorable Emmet Sullivan of the U.S. District Court for the District of Columbia expressed "disgust" at Mr. Flynn's efforts to mislead federal investigators and dismissed suggestions he had been treated unfairly. Judge Sullivan explicitly warned Mr. Flynn that even if he could show evidence of how much he had helped the Office of Special counsel and the Justice Department, he might still sentence him to prison; *See* "'Not Hiding My Disgust': Judge Rebukes Flynn, Then Delays Sentencing", New York Times, December 18, 2018, at *https://www.nytimes.com/2018/12/18/us/politics/michael-flynn-sentencing.html* (last accessed December 26, 2023);

- After Mr. Flynn sought to recant his guilty plea, the Justice Department reversed itself in 2020 and moved to withdraw the prosecution. *See* "Justice Department moves to drop case against Michael Flynn, citing FBI misconduct," CBS News, May 7, 2020, at *https://www.cbsnews.com/news/justice-department-drops-case-against-michael-flynn-ex-national-security-adviser/* (last accessed December 26, 2023);

- President Trump pardoned Mr. Flynn on November 25, 2020. *See* "Trump Pardons Michael Flynn, Ending Case His Justice Dept. Sought to Shut Down," New York Times, November 25, 2020, at *https://www.nytimes.com/2020/11/25/us/politics/michael-flynn-pardon.html* (last accessed December 26, 2023); and,

- Since then, Mr. Flynn has publicly and regularly peddled in numerous discredited conspiracy theories concerning such topics as Covid-19, Q'Anon and the 2020 election. *See* "Former Trump adviser Michael Flynn 'at the center' of new movement based on conspiracies and Christian nationalism," PBS News, September 7, 2022, at *https://www.pbs.org/news hour/politics/former-trump-adviser-michael-flynn-at-the-center-of-new-movement-based-on-conspiracies-and-christian-nationalism* (last accessed December 26, 2023). He has appeared on television and "pushed for Mr. Trump to impose martial law and deploy the military to "rerun" the election." *See* "Michael Flynn's Call for 'Martial Law' Comes Amid Violent Threats Over Trump Election Defeat", Newsweek, December 2, 2020, at *https://www.newsweek.com/ michael-flynn-call-martial-law-comes-amid-violent-threats-trump-election-defeat-1551769* (last accessed December 26, 2023), and was one of the leaders of the "Stop the Steal" effort to overturn the results of the 2020 presidential election. *See* "Longtime Trump advisers connected to groups behind rally that led to Capitol attack", ABC News, January 15, 2021, at *https://abcnews.go.com/US/longtime-trump-advisers-connected-groups-rally-led-capitol/story?id=75261028* (last accessed December 26, 2023).

As a matter of law, Mr. Flynn is a "public figure".

**B. Mr. Flynn Has Not Demonstrated And Cannot Demonstrate Mr. Wellman's Statements Constitute Defamation As A Matter Of Law**

Defamation, including libel and slander, "may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983). "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Id.* Whether a statement is defamatory is initially a question of law for this Court to determine. *See Turner v. Wells*, 879 F.3d 1254, 1262-63 (11th Cir. 2018). Under Florida state law, defamation is comprised of five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or

reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews For Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla.2008), *citing* Restatement (Second) of Torts §§ 558B, 580A-580B (Am. L. Inst. 1977).[6]

Because statements of opinion are not capable of being proven true or false, and therefore, not actionable for defamation, *see Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1999), it is also for this Court to decide, as a matter of law, whether the complained of words are actionable expressions of fact or non-actionable expressions of pure opinion and/or rhetorical hyperbole. *See Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1378 (S.D. Fla. 2006), *citing Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917,923 (M. D. Fla. 1996). The Court must look to the totality of the statement, the context in which it was published, and the words used to determine whether the statement is pure or mixed opinion. *See Keller v. Miami Herald Pub. Co.*, 778 F.2d 711, 717 (11th Cir. 1985).

Although the Complaint insinuates there are multiple unidentified defamatory statements, there are only three specific comments addressed by Mr. Flynn as having defamed him:

> "He's a traitor. He's being paid by Putin. Stop pretending Flynn hasn't forsaken his oath to the nation for money."
>
> "Mike Flynn is a foreign agent."

---

[6] Obviously (1) publication is not in dispute.

> "He's not a Putin apologist. He's a paid agent. Mike Flynn is a traitor and a bigot."

Complaint, ¶¶28-30. Mr. Flynn's Complaint provides nothing beyond self-serving legal analysis to demonstrate how any of these remarks constitute statements of fact. More to the point, the context of these statements and the words used by Mr. Wellman are fatal to Mr. Flynn's claims.

First, virtually the entirety of the three remarks is easily interpreted as pure opinion and rhetorical hyperbole. Comments that Mr. Flynn is a "traitor", a "bigot", a "Putin apologist", or that he has "forsaken his oath to the nation for money" are more than reasonably interpreted as "imaginative expression" that cannot be reasonably interpreted as stating actual facts about Mr. Flynn. *See Fortson*, 434 F. Supp.2d at 1378-79; *see also Murray v. Pronto Installations, Inc.*, 2020 U.S. Dist. LEXIS 213494, *12 (M.D. Fla. Nov. 16, 2020)("A statement is considered rhetorical hyperbole when the language itself negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the defamation.")(internal quotations omitted).

The U.S. Supreme Court has made it clear that terms like "traitor" constitute "loose language" or "undefined slogans" that cannot be construed as representations of fact. *See Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284 (1974). Courts across the country have ruled similarly. *See also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159-60 (9th Cir. 2021)(cable host's

description of news network as "paid Russian propaganda" is rhetorical hyperbole in context of other available information); *Koch v. Goldway*, 817 F. 3d 507, 509-510 (9th Cir. 1987) (insinuating someone is a "Nazi" is "understood not as a statement of fact but as a slur against a political opponent … [and] must be classified as opinion, nothing more"); *Raible v. Newsweek, Inc.*, 341 F. Supp. 804, 806-807 (W.D. Pa.1972)("[T]o call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic, or sociological philosophies gives no raise to an action for libel"); *Garrard v. Charleston Cnty. School District*, 838 S.E.2d 698, 714 (Ct. App. S.C. 2019)(concluding whether someone behaved like "racist douchebag" is matter of opinion); *Cummings v. City of New York*, 2020 U.S. Dist. LEXIS 31572, *61 (S.D.N.Y. Feb. 24, 2020)(use of term "bigot" nonactionable in defamation claim).

Second, even *assuming arguendo* (without conceding as a matter of law) that calling Mr. Flynn a "foreign agent", a "paid agent", or "paid by Putin" *could* be interpreted as reaching beyond the bounds of hyperbole and opinion, the factual record demonstrates that those assertions are firmly grounded in true facts. Truth, of course, is a complete bar to a defamation action. *See Target Media Partners v. Specialty Mktg. Corp.*, 828 Fed. Appx. 681, 684 (11th Cir. 2020). Importantly, under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist' or the 'sting' of the statement is true. *See Grayson v.*

*No Labels, Inc.*, 599 F. Supp. 3d 1184, 1188-89 (M.D. Fla. 2022), *citing Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1253 (S.D. Fla. 2014).

This court can take judicial notice of the following verifiable, authentic statements of facts regarding Mr. Flynn that were outlined by the Department of Defense's Office of the Inspector General:

> In 2015, Mr. Flynn received payments totaling $11,250 and $33,750 from entities that appear to be controlled by the Russian Government in exchange for paid appearances. There are no records of any requests or approvals for Mr. Flynn to receive those payments.
>
> On March 7, 2017, Mr. Flynn retroactively registered with the Department of Justice under the Foreign Agents Registration Act ("FARA") for his paid work in support of Inovo BV, a corporation organized in the Netherlands, that was done at the direction and supervision of the Government of Turkey.

*https://media.defense.gov/2022/Jul/08/2003032086/-1/-1/1/DODOIG-2021-000374%20RESPONSIVE%20RECORDS.PDF* (last accessed December 26, 2023).

In short, the assertions by Mr. Wellman regarding Mr. Flynn are demonstrably true statements of fact. Mr. Flynn did receive payments from the Russian and Turkish Governments and, in fact, registered with the U.S. Government as a "foreign agent" for his work at the direction of the Turkish Government.[7] Mr. Flynn also specifically received a payment from the Russian

[7] The Complaint falsely states that Mr. Wellman said Mr. Flynn is an "agent of Russia". Complaint, ¶36(b). Nowhere within the four corners of the three tweets identified by Mr. Flynn did Mr. Wellman ever say Mr. Flynn was an agent of Russia. To the contrary, Mr. Wellman said he was a "foreign agent" and a "paid agent". *Id.* at ¶¶29-30. He was. Nor did Mr. Wellman say Mr. Flynn was "guilty of committing treason". *Id.* at ¶36(c) Mr. Flynn cannot put words into Mr. Wellman's mouth to create an actionable defamation claim.

Government to attend a dinner for state-run media outlet Russia Today (otherwise known as "RT") during which Russian President Vladimir Putin was present and seated at the same table as Mr. Flynn. *https://www.nbcnews.com/news/world/guess-who-came-dinner-flynn-putin-n742696* (last accessed December 26, 2023).[8] Whether Mr. Flynn was actually "paid by Putin" is an irrelevant difference. Putin, as president and in full control of his country, *is* the Russian Government and Mr. Flynn was paid by Russian state entities. *See* Council on Foreign Relations, "How Firm Is Vladimir Putin's Grip on Power?", October 2, 2023, at *https://www.cfr.org/in-brief/how-firm-vladimir-putins-grip-power#:~:text=In%20addition%2C%20as%20president%2C%20 Putin,the%20country's%20immense%20natural%20resources* (last accessed December 26, 2023).

Truth is a complete defense to a claim of defamation, and Mr. Wellman is entitled to judgment that his statements (if construed as more than mere opinion) were sufficiently true to warrant dismissal of the defamation claim(s).

---

[8] *See* "RT agrees to register as an agent of the Russian government," Washington Post, November 9, 2017, at *https://www.washingtonpost.com/world/national-security/rt-agrees-to-register-as-an-agent-of-the-russian-government/2017/11/09/bd62f9a2-c558-11e7-aae0-cb18a8c29c65_story.html* (last accessed December 26, 2023); Office of Public Affairs, "Production Company Registers Under the Foreign Agent Registration Act as Agent for the Russian Government Entity Responsible for Broadcasting RT," U.S. Department of Justice, November 13, 2017, at *https://www.justice.gov/opa/ pr/production-company-registers-under-foreign-agent-registration-act-agent-russian-government* (last accessed December 26, 2023).

1. *As A Public Figure, Mr. Flynn Has Not And Cannot Plead Sufficient Facts Demonstrating Mr. Wellman Acted With Knowledge Or Reckless Disregard for the Truth*

An intention to portray a public figure in a negative light, even when motivated by ill will or evil intent, is not sufficient to show actual malice unless the publisher intended to inflict harm through knowing or reckless falsehood. *See Don King Prods. v. Walt Disney Co.*, 40 So. 3d 40, 45 (Fla. 4th DCA 2010), *citing Garrison v. Louisiana*, 379 U.S. 64, 73 (1964). The "actual malice" standard presents an "overwhelming burden" to defamation claims by public-figure plaintiffs. *See Demby v. English*, 667 So. 2d 350, 354 (Fla 1st DCA 1995). To state a claim under that rigorous standard, Plaintiff must aver facts tending to show, by "clear and convincing evidence," that Defendant subjectively "entertained serious doubts as to the truth" of the statements at issue. *See Don King Prods., Inc.*, 40 So. 3d at 43. The Eleventh Circuit has previously held that the *Twombly/Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings." *Jacoby v. CNN*, 537 F. Supp. 3d 1303, 1311 (M.D. Fla. 2021), *quoting Michel*, 816 F.3d at 702.

Mr. Flynn has not pled – and, for the reasons outlined in detail above with respect to defamation, *supra* 14-20, cannot plead – facts demonstrating that Mr. Wellman's statements (even if they constitute statements of fact) were made with reckless disregard for the truth. "The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant." *Michael*, 816 F.3d at 703.

"Rather, [the Court] ask[s] whether the defendant, instead of acting in good faith, actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Id.*, *citing NY Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

The record shows that to the extent any of Mr. Wellman's remarks are statements of fact capable of verification they are *true* statements, such as the fact Mr. Flynn received payments from the Russian Government, that one of those payments was for an event in which Mr. Flynn sat at a dinner table with President Putin, and that Mr. Flynn has previously registered as a paid foreign agent under FARA, all of which were in the public record and well-known *long* before Mr. Wellman made his three tweets. *See supra* 18-20.

In short, there is no basis to conclude any of the statements were made with reckless disregard for the truth, particularly given all Mr. Flynn has asserted are "conclusory statements and lackluster allegations," similar to those that failed in *Jacoby*, 573 F.Supp.3d at 1311-12. For these reasons, Mr. Flynn has not and cannot meet the actual malice standard and his Complaint should respectfully be dismissed.

2. *Mr. Flynn Cannot Demonstrate Defamation Per Se*

As the Honorable Mary S. Scriven stated in *Lori Flynn v. CNN, Inc.*, 2023 U.S. Dist. LEXIS 165234, *12 (M.D. Fla. Mar. 17, 2023)(citation omitted):

> A publication rises to the level of defamation *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Daniels v. HSN, Inc.*, No. 818CV3088T24JSS, 2020 WL 533927, at *3 (M.D. Fla. Feb. 3, 2020); *see also Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953)(explaining that statements are defamation *per se* when, "considered alone without innuendo, they contain (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, disgust, ridicule, contempt or disgrace, or (4) injury a person in his trade or profession").[9]

In a defamation *per se* case, "consideration is given only to the four corners of the publication." *Daniels*, 2020 U.S. Dist. LEXIS 19219 at *11. Mr. Flynn's Complaint does not say much about why he believes he suffered defamation *per se*. Complaint, ¶¶44-45. That is not surprising because he admits that his claim is based on the readers' need to "imply" some injurious perception tied to the crime of treason. *Id.* at ¶44. Mr. Flynn knows this is necessary from a pleading standpoint because "[i]f a statement charges an individual with the commission of a crime—the statement is defamatory per se." *Shafran v. Parrish*, 787 So. 2d 177, 179 (Fla. 2d DCA 2001)(citation omitted).

The problem for Mr. Flynn, however, is that the text at issue is clear. Nowhere within his three tweets did Mr. Wellman accuse Mr. Flynn of the crime of treason. Nor is simply calling someone a "traitor" the equivalent of saying they

---

[9] Although the Court dismissed the original Complaint, the Plaintiff, Mr. Flynn's wife, who is notably represented by the same attorneys as in this case, was allowed to and did file a Second Amended Complaint and the matter remains pending as of the date of this submission.

committed the crime of treason. *See* The Hill, "Trump Jr. and 'treason': Experts advise caution with loaded term," July 12, 2017, at *https://thehill.com/homenews /administration/ 341607-experts-advise-caution-with-loaded-term/* (last accessed December 26, 2023). Whatever implication Mr. Flynn is assuming would only exist "as a consequence of extrinsic facts." *Daniels*, 2020 U.S. Dist. LEXIS 19219 at *10, *quoting Paulson v. Cosmetic Dermatology, Inc.*, 2017 U.S. Dist. LEXIS 88031, 2017 WL 2484197, at *2 (S.D. Fla. June 8, 2017)(citation omitted).

If this information even exists, the additional contextual material falls outside the "four corners" of the Complaint. *Manhattan Cap. Equities, Inc. v. JBTX3 Holdings, LLC*, 2021 U.S. Dist. LEXIS 37693 ** (S.D. Fla. Feb. 26, 2021).[10] A *per se* defamation claim includes words that "upon their face and without the aid of extrinsic proof [are] injurious." *Boyles v. Mid-Florida TV Corp.*, 431 So. 2d 627, 633 (Fla. 5th DCA 1983). Defamation *per se* statements are "so obviously defamatory" they do not require references to extrinsic evidence. *Samara v. Juice Plus+ Co., LLC*, 2020 U.S. Dist. LEXIS 263912 * (M.D. Fla. Sept. 9, 2020).

As such, Mr. Flynn fails to state a claim for defamation *per se* and therefore even if some part of Mr. Flynn's case survives this Motion, the *per se* claim should be outright dismissed in its entirety.

---

[10] Thus, the assertions that Mr. Wellman's statements are defamatory based on the alleged "hundreds of readers comments," none of which are cited or identified, that "display animus and contempt" for Mr. Flynn, Complaint, ¶¶39-40, are irrelevant as being outside of the "four corners" of the Complaint.

*3. Mr. Flynn Also Cannot Demonstrate Defamation Per Quod*

Although Mr. Flynn does not specifically characterize his defamation claim as *per quod*, under Florida law, even if a court does not find a statement qualifies as defamation *per se*, a court will permit a defamation *per quod* claim to proceed if the plaintiff alleges "items of *special* as well as general damages." *Hood v. Connors*, 419 So. 2d 742, 743 (Fla. 5th DCA 1982)(emphasis added); *see also Daniels*, 2020 U.S. Dist. LEXIS 19219 at *13 (permitting plaintiff, who failed to adequately plead defamation *per se*, to "proceed on his defamation claim *per quod* if he c[ould] show that he has actually suffered damages due to [defendant's] statement"). Consequently, the Court must next determine whether Mr. Flynn has adequately pleaded special damages.

To survive a motion to dismiss, a Plaintiff must "specifically state[ ]" the item of special damage claimed. *See* Fed. R. Civ. P. 9(g). "Special damages are *actual, out of pocket losses* which must be proven by specific evidence as to the time, cause and amount; whereas general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community." *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004)(emphasis added). Special damages exist where the plaintiff can show "a loss of money or some other material temporal advantage capable of being assessed in monetary value." *Hood v. Dun & Bradstreet, Inc.*,

486 F.2d 25, 33 (5th Cir. 1973). The "chief characteristic . . . is a realized or liquidated loss." Id.

In his Complaint, Mr. Flynn specifically seeks special damages, actual damages and punitive damages. Complaint, ¶¶42-43, p.15. He alleges the tweets caused him to "suffer significant damages in Florida, including damage to his reputation, humiliation, embarrassment, and mental anguish". *Id.* at ¶41. Allegations for special damages must be pled in more than "a conclusory manner; rather [w]ords actionable . . . *per quod* are those who[se] injurious effect must be established by due allegation and proof." *Anderson v. Smith*, 2020 U.S. Dist. LEXIS 256242, *9 (M.D. Fla. Mar. 24, 2020), *quoting Campbell v. Jacksonville Kennel Club*, 66 So.2d 495, 497 (1953)(citation and quotation removed).

In *Anderson*, the court dismissed plaintiff's libel *per quod* claim because she had "insufficiently alleged she suffered special damages" where she did not allege "an actual loss of employment, or a realized loss attributable to her diminished stature in the community." *Id.* It borders on axiomatic that Mr. Flynn's counsel is aware of the need to properly plead special damages as one of this Court's brethren reiterated the details in a separate lawsuit the same attorneys brought in this District on behalf of Mr. Flynn's wife and family members. *See Lori Flynn*, 2023 U.S. Dist. LEXIS 165234, *17-*18. Judge Scriven ruled that the Amended Complaint was deemed "devoid of allegations of actual employment loss or realized loss attributable to her being called a QAnon

follower. Instead, like the plaintiff in *Anderson*, Plaintiff relies on conclusory allegations to support her claim for special damages." *Id.* at *18-*19. *Cf. Jack Flynn et al. v. CNN*, 2021 U.S. Dist. LEXIS 241775, *14-15 (S.D.N.Y. Dec. 16, 2021)(absent any factual enhancement to support conclusory allegations of special damages, "the complaint is insufficient to support an inference that the Flynns suffered actual economic harm.")(Plaintiff's siblings). Of course, it is "not the Court's duty to search the record to find evidence to support Plaintiff's claims." *Daniels*, 2020 U.S. Dist. LEXIS 19219 at *15, *citing Restigouche, Inc. v. Town of Jupiter*, 59 F.3d 1208, 1213 n.5 (11th Cir. 1995)("We do not require trial courts to search the record and construct every argument that could have been made based upon the proffered materials").

The Complaint's allegations, which simply refer to "special damages" in passing in its Prayer for Relief, fail to plausibly allege special damages, much less present any scintilla of evidence of any damage, to justify allowing a defamation *per quod* claim to continue.

## IV. MR. FLYNN HAS NOT SATISFIED AND CANNOT SATISFY THE ELEMENTS OF INJURIOUS FALSEHOOD

The tort of injurious falsehood protects the economic interests of an injured party against pecuniary loss, in contrast to defamation, which protects the personal reputation of the injured party. *See Markle v. Markle*, 2023 U.S. Dist. LEXIS 55418, *30 (M.D. Fla. Mar. 30, 2023), *citing Callaway Land & Cattle Co., Inc.*

*v. Banyon Lakes C. Corp.*, 831 So.2d 204, 209 (Fla. 4th DCA 2002). The necessary elements are: "(1) [a] falsehood (2) that has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." *Markle*, 2023 U.S. Dist. LEXIS 55418, *30-*31, *quoting Bothmann v. Harrington*, 458 So.2d 1163, 1168 (Fla. 3d DCA 1984).

Florida law requires as an essential element of a claim for injurious falsehood a specific and unfavorable falsity uttered by the defendant about the plaintiff. *See Fin. Info. Techs., Inc. v. iControl Sys., USA, LLC*, 2018 U.S. Dist. LEXIS 170808, *4 (M.D. Fla. Oct. 3, 2018). The term injurious falsehood is an "umbrella" term that includes slander of title, disparagement of property, and trade libel. *See Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999); *see also Fin. Inf. Techs., Inc. v. iControl Sys., USA, LLC*, 2018 U.S. Dist. LEXIS 170808, *4-*5 (M.D. Fla. Oct. 3, 2018)(collecting cases outlining statements are required about title, property, land, chattels or intangible things).

First and foremost, this claim should be rejected as duplicative of the defamation claim outlined in Count I in the Complaint. Under the single action/publication rule, a plaintiff may not proceed on multiple counts for what

is essentially the same defamatory publication or event. *See Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1256 (S.D. Fla. 2014); *see also Markle*, 2023 U.S. Dist. LEXIS 55418, *31 (dismissing injurious falsehood claim as factually duplicative of separate defamation claim).

Count II (injurious falsehood) does not allege any specific facts distinct from Count I (defamation). The only thing Mr. Flynn does to try and distinguish the two claims is make a self-serving and conclusory assertion that Mr. Wellman's comments were somehow designed to ruin Mr. Flynn's ability to participate in public advocacy or harm his undefined "business of promoting election integrity and reform." Complaint, ¶¶48, 50. That allegation, in and of itself, does not separate Count II from the same facts as Count I. For that reason alone, Count II should be dismissed.

Second, for the reasons outlined in detail above with respect to defamation, *supra* 14-20, and incorporated herein, Mr. Wellman's remarks were not defamatory given that they either (a) were rhetorical hyperbole and pure opinion, and/or (b) were true statements of fact supported by verifiable information.

Third, even if this Court were to disagree with Mr. Wellman's arguments regarding defamation and the truth of his remarks (to the extent they are even statements of fact), Mr. Flynn has not properly pled the remaining elements of an injurious falsehood claim. Specifically, nowhere within the four corners of his

Complaint does Mr. Flynn factually allege that Mr. Wellman's remarks played a material and substantial part in inducing others not to deal with Mr. Flynn, to say nothing of identifying actual special damages that were the proximate cause of Mr. Wellman's remarks. The Complaint does not identify any lost business opportunities that were proximately caused by Mr. Wellman's tweets nor any expenses incurred by Mr. Flynn to defend his reputation in light of Mr. Wellman's statements.

This claim on its face is factually deficient and legally meritless. Count II should respectfully be dismissed.

## V. MR. FLYNN COULD NEVER BE LEGALLY ENTITLED TO PUNITIVE DAMAGES AND THAT REQUESTED RELIEF SHOULD BE DISMISSED REGARDLESS

Florida law requires a plaintiff to plead specific acts of the defendant that justify a punitive damage award. *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1341 (11th Cir. 2001). More importantly, to recover punitive damages under a defamation claim against a media defendant, such as Mr. Wellman, with respect to a matter of public concern, a plaintiff must allege that said defendant acted with malicious intent. *See Hunt v. Liberty Lobby*, 720 F.2d 631, 650 (11th Cir. 1983). *see also Carroll v. TheStreet.com, Inc.*, No. 11-CV-81173, 2012 U.S. Dist. LEXIS 202084, 2012 WL 13134547, at *4 (S.D. Fla. May 25, 2012)("It is well-established that . . . presumed and punitive damages in a defamation action are recoverable only if liability is based on proof of actual malice, i.e. knowledge of falsity or

reckless disregard for the truth."). Under Florida common law, to recover punitive damages a defamation plaintiff must prove "express malice" or "common law malice" – that the defendant acted with a primary motive to injure the plaintiff personally. *See Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 727 (Fla. 4th DCA 2010).

As detailed above, *supra* 14-28, there is not and cannot be a reasonable evidentiary basis for recovery of *any* damages. Mr. Wellman's remarks were not defamatory given that they either (a) were rhetorical hyperbole and pure opinion, and/or (b) were true statements of fact supported by verifiable information. *Id.* at 14-20. Further, even if this Court were to conclude otherwise, Mr. Flynn has not and cannot demonstrate actual malice, *id.* at 20-22, and has expressly failed to do so within the "four corners" of his Complaint thereby requiring dismissal. *See* Complaint, ¶¶39-40.

To the extent that the Court permits some part of this lawsuit to proceed forward (which it should not do), any reference to punitive damages should be stricken from the complaint. *See Gertz v. Robert Welch*, 418 U.S. 323, 349 (1974)("[T]he States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.").

## VI. IN DISMISSING MR. FLYNN'S COMPLAINT THIS COURT SHOULD GRANT SANCTIONS UNDER FLORIDA'S ANTI-SLAPP LAW

Florida's Strategic Lawsuits Against Public Participation, otherwise known as the Anti-SLAPP law, prohibits a person from filing a cause of action "against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue[.]" *See Markle*, 2023 U.S. Dist. LEXIS 55418, *32, *citing* Fla. Stat. § 768.295(3); *see also* Fla. Stat. § 768.295(2)(a)(defining "[f]ree speech in connection with public issues" as "any written or oral statement that is protected under applicable law and … is made in or in connection with a … play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work.").[11]

A motion to dismiss based on the Anti-SLAPP statute is distinct from a traditional motion to dismiss. The statute "focuses not on whether a cause of action has been sufficiently alleged, but on whether the activity alleged… is protected activity." *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 314 (Fla. 2d DCA 2019). To claim entitlement, a moving defendant must demonstrate (a) the action is "without merit", and (b) it was filed "primarily" because the defendant exercised a protected right. *See* Fla. Stat. § 768.295(3); *see also Markle*, 2023 U.S.

[11] It is well-established this statute applies in federal court. *See Markle*, 2023 U.S. Dist. LEXIS 55418, *33 (collecting cases across federal district courts in Florida, including this District).

Dist. LEXIS 55418, *33 (noting requirement of hearing before awarding fees and costs). Further, if the moving defendant can meet that *prima facie* threshold, the burden then shifts to the non-movant plaintiff to provide facts demonstrating to the contrary. *See Gundel*, 264 So. 3d at 314; *see also id.* (trial court must "do more than accept as true the factual allegations in the four corners of the complaint and draw all reasonable inferences therefrom in favor of the claimant").

The court shall award the prevailing party with "reasonable attorneys fees and costs" incurred in connection with a violation of an anti-SLAPP provision. Fla. Stat. § 768.295(4); *see also Markle*, 2023 U.S. Dist. LEXIS 55418, *33 (clarifying fees and costs only available with respect to anti-SLAPP motion itself, not entire action). Florida district courts have routinely applied the State's anti-SLAPP statute, *id.* at *33 (collecting cases), and these motions are subject to *de novo* appellate review. *See Parekh v. CBS Corp*, 820 Fed. Appx. 827, 836 (11th Cir. 2020).

Uniquely, the anti-SLAPP provisions require the courts to expeditiously resolve meritless claims given the chilling effect on constitutional rights that the law is designed to prevent. *See WPB Residents for Integrity in Gov't, Inc., v. Materio*, 284 So.3d 555, 559 (Fla. 4th DCA 2019), *citing Gundel.*, 264 So.3d at 310. After all, there is a powerful interest in ensuring that free speech is not unduly

burdened by the necessity of defending against expensive yet groundless litigation. *See Michel*, 816 F.3d at 702.[12]

Even at this early stage of the litigation, this Court would be within its authority to grant Mr. Wellman's anti-SLAPP motion. *See Parekh*, 820 Fed. Appx. at 832, 836 (affirming anti-SLAPP award with respect to statements that lacked defamatory meaning and addressed matter of public concern).[13] This lawsuit is clearly meritless. The statements made by Mr. Wellman either qualify as pure opinion and/or, to the extent they constitute facts capable of verification, are *true* statements of fact supported by publicly available information. *Supra* 16-20.[14] And Mr. Flynn is more than aware that he has not suffered one articulable

---

[12] Hence the difference between this statutory provision that permits expeditious review due to concerns involving public speech and that of Fla. Stat. Section 57.105, which permits a party to seek the imposition of sanctions upon another generally for pursuing unsupported claims or defenses but necessitates a twenty-one day Safe Harbor provision, *id.* at (4), before being filed with the Court in order to allow a party to address the issue. Mr. Wellman has contemporaneously served such a Motion upon Mr. Flynn to allow him the opportunity to withdraw this lawsuit immediately and avoid sanctions. Should no action be taken, that Motion will be separately and properly filed with this Court.

[13] The circumstances in which district courts within the Eleventh Circuit have denied anti-SLAPP motions have typically been without prejudice and in light of procedural issues that prevented the court from adjudicating the full merits of the defamation claims. *See, e.g., Markle*, 2023 U.S. Dist. LEXIS 55418, *34-*35 (denying anti-SLAPP motion without prejudice despite dismissing defamation claims in light of leave for plaintiff to replead claims); *Barbuto v. Miami Herald Media Co.*, 2021 U.S. Dist. LEXIS 177120, *9-*10 (S.D. Fla. Sept. 17, 2021)(denying anti-SLAPP motion as premature in light of court dismissing claim for failure to give pre-suit notice and granting leave for plaintiff to refile amended lawsuit).

[14] Statements made on Twitter are encompassed by the definitions set out in 768.295(2)(a), Fla. Stat. *See also WPB Residents for Integrity in Gov't Inc., v. Materio*, 284 So. 3d 555, 562 (widely disseminated modes are protected First Amendment speech).

dollar of harm. No direct pecuniary losses. No lost business opportunities. Nor has he spent any identifiable money to defend his reputation solely as a result of Mr. Wellman's three tweets, although no doubt Mr. Flynn has spent money to try and rehabilitate the harm to his reputation that he alone caused. *See e.g.,* "Michael Flynn's Holy War," at *https://www.youtube.com/watch?v=lhRNDsLbOvQ* (last accessed December 26, 2023)(2022 PBS/Frontline documentary that examines how Mr. Flynn emerged as leader in far-right movement and is attracting election deniers, conspiracists and extremists from around country).

This lawsuit is part of a MAGA campaign by Mr. Flynn, and particularly his legal counsel, to silence and punish those who criticize them and other MAGA luminaries. The Court can take judicial notice of the fact that in this year alone Mr. Flynn has filed at least four other defamation cases against those whose political commentary he dislikes. *See e.g., Flynn v. Stern*, Case No. 2023-CA-2052 (Fla. 7th Cir. Ct.)(Dec. 5, 2023)(defamation case); *Flynn v. Weissmann et al.*, Case No. 23—cv-02429 (Oct. 24, 2023)(M.D. Fla)(defamation case); *Flynn v. Wilson*, Case No. 2023-CA-004264 NC (Cir. Ct. Sarasota, July 13, 2023)(defamation case); *Flynn v. Stewartson*, Case No. 2023-CA-004264 NC (Fla. 12th Cir. Ct. May 3, 2023) (defamation case). This is on top of yet another defamation case he, represented by the same attorneys, filed in 2022, *see Flynn v. Stern*, 2022 U.S. Dist. LEXIS 201512 (slip op. Nov. 4, 2022)(M.D. Fla.)(defamation case) and which, according to the Court docket, has been settled.

The record of his legal counsel is even more pronounced. The Binnall Law Group (Alexandria, Virginia), which is representing Mr. Flynn, has been repeatedly filing or defending lawsuits on behalf of the MAGA world, including for prominent public officials such as former President Trump, *see e.g. Trump v. Clinton et al.*, 653 F. Supp. 3d 1198 (S.D. Fla. 2023)(conspiracy lawsuit), *Thompson v. Trump*, 590 F. Supp. 3d 46 (D.D.C. 2022)(defending against civil rights conspiracy lawsuit), *Sicknick v. Trump et al.*, Case No. 23-cv-00038 (D.D.C.) (defending against wrongful death lawsuit), *Trump Media v. Guardian et al.* Case No. 2023-CA-0081880 (Fla. 12th Cir. Ct. Nov. 20, 2023)(defamation case), *Trump Media v. Washington Post*, Case No. 23-cv-1535-TPB-AAS (M.D. Fla)(defamation case); former Ambassador Rick Grenell, *see e.g. Grenell v. Troye*, Case No. CL22001907 (Va. Cir. Ct. 2022)(defamation case); former Congressman Devin Nunes (R-CA), *see e.g.* Reuters, *Washington Post asks US judge to sanction Trump ally Devin Nunes*, Oct. 12, 2023, at *https://www.reuters.com/legal/government/washington-post-asks-us-judge-sanction-trump-ally-devin-nunes-2023-10-12/* (last accessed December 26, 2023)(defamation case); and former Department of Defense official Kash Patel ("Mr. Patel"), *Patel v. Liu et al.*, Civil Case No. 23-cv-2699 (D.D.C.) (Bivens case). Candidly, this list is just a fraction of the cases the Binnall Law Group is handling, many of which are either not aggressively prosecuted, dismissed not long after filing and/or involve sanctions.

In fact, in the *Clinton* lawsuit pending in the U.S. District Court for the Southern District of Florida, where former President Trump and several of his attorneys have already been sanctioned nearly $1,000,000 in fines for filing the lawsuit in violation of Rule 11, 653 F. Supp. 3d at *passim*, Mr. Flynn's attorneys entered that case right before sanctions were imposed (Dkt. 274 – Notice of Appearance of attorney Jared Roberts) and thereafter sought to reverse the decision by alleging new evidence had been obtained (Dkt. 331). Judge Middlebrooks excoriated the arguments proffered by Mr. Flynn's very own lawyers and reiterated that the latest Motion was nothing less than characteristic of:

> Mr. Trump's pattern of misusing the courts to serve a political purpose. The telltale signs being:
>
> • Provocative and boastful rhetoric;
> • A political narrative carried over from rallies;
> • Attacks on political opponents and the news media;
> • Disregard for legal principles and precedent; and
> • Fundraising and payments to lawyers from political action committees.

*Clinton*, Case No. 22-cv-14102, slip op. Sept. 15, 2023, *14 (Dkt. 343), at *https://storage.courtlistener.com/recap/gov.uscourts.flsd.610157/gov.uscourts.flsd.610157.343.0.pdf* (last accessed December 26, 2023). There is little difference between that case and this one. The tactics and intent are the same.

Closer to home, the same attorneys have also represented Mr. Flynn's wife and family members in at least one dismissed defamation action against a

media defendant within this District. *See Lori Flynn*, 2023 U.S. Dist. LEXIS 165234, *25-*26 (dismissing defamation claims without prejudice with leave to amend). In fact, the Binnall Law Group, primarily through attorney Jared Roberts[15], have represented Mr. Flynn in at least three other lawsuits in this District alone. *See e.g., Flynn v. Weissmann et al.*, Case No. 23—cv—02429 (M.D. Fla. Oct. 24, 2023)(defamation); *Flynn v. United States of America*, Case No. 8:23 – cv – 00485 (M.D. Fla. Mar. 3, 2023)(tort claims); *Flynn v. Pelosi et al.* Case 8:21 – cv – 02956 (M.D. Fla. Dec. 21, 2021)(subpoena challenge).

The question arises as to who or what is paying for all of these lawsuits. It is publicly known that Mr. Patel, who shares office space on the same floor with the Binnall law firm, created a charity, *www.FightwithKash.com,* and has stated that "the whole point" of his charity is "helping other people" in need, but he has also said its work is, at least in part, about bringing "America First patriots" together and "helping fight the Deep State." ABC News, Trump loyalist Kash Patel's tax-exempt charity raises questions, experts say, March 8, 2023, at *https://abcnews.go. com/US/trump-loyalist-kash-patels-tax-exempt-charity-*

[15] Given Mr. Robert's lead role in these public figure MAGA defamation cases, it is no surprise that he has publicly advocated for the elimination of the actual malice standard, particularly because the "reckless left wing-media" has for too long "felt emboldened to tell lies about America First Republicans" and needs to suffer "consequences". *See https://www.binnall.com/insights-news/leftists-wont-hold-themselves-accountable-the-courts-must/* (last accessed December 26, 2023). Mr. Roberts' similarly supports his client's views, as is their right, that those arrested for the attempted insurrection at the U.S. Capitol on January 6, 2021, are "political prisoners". *See https://x.com/JaredJRoberts/status/1632941707351171073?s=20* (last accessed December 26, 2023).

*raises/story?id=97657747* (last accessed December 26, 2023). Mr. Binnall serves on

the organization's Board of Directors. *See https://thekash foundation.com/team* (last

accessed December 26, 2023).

While it is not known at this time whether Mr. Patel, or another entity, is

specifically funding this lawsuit, Mr. Binnall's views on the subject are quite

clear as he threatened that RINOs ("Republicans in Name Only") are on notice

that they can "no longer lie about America First Republicans with impunity any

more."



Mr. Wellman is a RINO. Mr. Flynn is an "America First Republican." Beyond

what should respectfully be viewed as a transparent intimidation effort, if this

case is being funded by a third party as a fight against the "Deep State" rather

than a true attempt to recover personal damages for Mr. Flynn, this is exactly

the type of case Florida's anti-SLAPP statute is designed to protect against.

The implication is clear: Mr. Flynn and his counsel are waging a legal war to

grind down political opponents with baseless and meritless lawsuits. The goal

of these lawsuits is not to secure actual monetary judgments – and certainly not

in the amount of $150 million, *see* Complaint at *15 (Prayer for Relief) [16] – as much as it is to silence through financial attrition those who exercise their protected First Amendment rights to inform the public regarding the political agenda of Mr. Flynn and candidates for public office whom he supports.

That is the very type of case Florida's anti-SLAPP law is designed to prevent. Accordingly, this Court should respectfully grant sanctions against Mr. Flynn and his legal counsel and convene a hearing to determine the scope of fees and costs that should be awarded to Mr. Wellman. That hearing should explore to what extent Mr. Flynn's legal fees are being paid by third parties, and, if they are, adjust the scope of the sanctions accordingly to deter future abuse of the legal system.

## LOCAL RULE 3.01(g) CERTIFICATION

**I HEREBY CERTIFY,** Pursuant to Loc. R. 3.01(g), the undersigned contacted the opposing counsel regarding the issues presented in this Motion on December 22, 2023. The Parties were unable to resolve the issues and Plaintiff has advised that he objects to the relief sought herein.

[16] Interestingly, in the *Weissmann* defamation case, which was filed only weeks before the instant matter against three media defendants and significantly relies upon the same boilerplate legal pleading language for claims of defamation, defamation *per se* and injurious falsehood, Mr. Flynn only sought damages in "excess of $75,000," *see* Complaint, Case No. 23—cv—02429 (Dkt. 1), whereas here Mr. Flynn, while allegedly suffering literally the same type of damages, seeks the extraordinary amount of $150,000,000.

**Respectfully submitted,**

*/s/ Joshua M. Entin*
JOSHUA M. ENTIN, ESQUIRE
ENTIN LAW GROUP, P.A.
1213 S.E. Third Avenue
Ft. Lauderdale, Florida 33316
(954) 761-7201
Josh@entinlaw.com

*/s/Mark S. Zaid*
MARK S. ZAID, ESQUIRE
*Admitted Pro Hac Vice*
BRADLEY P. MOSS, ESQUIRE
*Admitted Pro Hac Vice*
MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 498-0011
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023, I caused the foregoing to be filed electronically with the Clerk of the Court by using the CM/ECF system, which will send notice of electronically to:

Jared J. Roberts, Esq.
Shawn M. Flynn, Esq.

*Plaintiff's Counsel*

*/s/ Mark S. Zaid, Esquire*