# EXHIBIT "3"

IN THE TWELFTH JUDICIAL CIRCUIT COURT
IN AND FOR SARASOTA COUNTY, FLORIDA

MICHAEL T FLYNN,
       Plaintiff,

v.

CASE NO.  2023 CA 004264 NC
       DIVISION C CIRCUIT

JIM STEWARTSON,
RICK WILSON,
MEIDASTOUCH LLC,
       Defendant.

_____

**ORDER
(1) GRANTING FINAL SUMMARY JUDGMENT
IN FAVOR OF DEFENDANT RICK WILSON;
(2) GRANTING IN PART AND DENYING IN PART
DEFENDANT STEWARTSON'S MOTION TO DISMISS; AND
(3) DIRECTING DEFENDANT STEWARTSON
TO ANSWER THE REMAINING ALLEGATIONS
OF THE SECOND AMENDED COMPLAINT
<u>NOT DISMISSED OR STRICKENED</u>**

    BEFORE THE COURT are (1) Defendant Wilson's Motion to Dismiss or in the Alternative Motion for Summary Judgment Pursuant to Section 786.265, Florida Statutes [DIN 63]; and (2) Defendant Jim Stewartson's Motion to Dismiss Plaintiff's Second Amended Complaint [DIN 62]. Plaintiff responded in opposition [DINs 69, 68, respectively]. The third defendant, Defendant MeidaTouch, has not been served. This Order does not adjudicate any matter with respect to that defendant.

    The Court first discusses the Complaint and general law. The Court will then address each of the two individual Defendant's motions separately.

**The Second Amended Complaint**

    The Second Amended Complaint purports to allege: (1) defamation and defamation per se against all three defendants in Count 1; and (2) injurious falsehood against all three defendants in Count 2 [DIN 59]. The Plaintiff identifies many separate allegations of defamation and then includes those allegations within a single defamation count and a single injurious falsehood count. The description below comes exclusively from the allegations of the Second Amended Complaint.

Filed 01/30/2024 08:39 AM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL

Plaintiff is Lieutenant General Michael T. Flynn, retired ("General Flynn") [DIN 59, p.1, ¶1]. He formerly served as the Director of the United States' Defense Intelligence Agency [DIN 59, p. 4, ¶18].

Defendant Jim Stewartson is a media and technology professional with thousands of followers across several social media platforms, host of his own podcast with paid subscriptions, and creator of "The Thinkin Project," a purported anti-disinformation chat group ("Mr. Stewartson") [DIN 59, pp. 1-2, 6 ¶¶1-4, 29]. According to General Flynn, Mr. Stewartson regularly defames General Flynn and other prominent conservative activists to Mr. Stewartson's listeners and followers as a means for Mr. Stewartson to make a living for himself [DIN 59, pp. 1-2, ¶¶1-5]. General Flynn contends Mr. Stewartson has made many defamatory statements concerning him, generally grouped into 14 separate categories [DIN 59, p. 8, ¶46]. General Flynn then enumerates multiple specific instances of defamation, which he contends is "non-comprehensive" [DIN 59, pp. 9-41, ¶¶49-96].

On October 22, 2023, Mr. Stewartson joined Defendant MeidaTouch Network, which hosts and republishes Mr. Stewartson's shows and content [DIN 59, p. 2, ¶7]. Founded in May 2010 by the Meiselas family, MeidaTouch operates a YouTube channel with 1.74 million subscribed and hosts fourteen left-wing political commentators [DIN 59, p. 7, ¶¶38-43]. General Flynn alleges that MediaTouch broadcast Mr. Stewartson's defamatory comments. [DIN 59, pp. 39-41, ¶¶92-96].

Defendant Rick Wilson is the founder of The Lincoln Project, which General Flynn characterizes as an anti-Republican group that spreads lies against conservative figures associated with former President Donald Trump [DIN 59, p. 2, ¶8]. General Flynn contends that Mr. Wilson defamed General Flynn in two regards: by calling him a "Putin employee" and calling him "Q." [DIN 59, p. 3, ¶9].

Defendant MeidaTouch apparently has not yet been served.

## ANALYSIS

Defendants Messrs. Stewartson and Wilson both have invoked section 768.295, Florida Statutes to dismiss the case under Florida's anti-SLAPP statute, and, alternatively they seek to dismiss the case under Florida's normal "four-corners" standard. Defendant Wilson further alternatively requests summary judgment in his favor. Defendant Stewartson did not move for summary judgment.

The Court first identifies the elements of the causes of action. The Court then addresses the application of Florida's anti-SLAPP statute. Finally, the Court applies the governing law to each Defendant's claims separately.

### 1. The Elements

Filed 01/30/2024 08:39 AM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL

In Florida, a defamation claim by a public figure has five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Kieffer v. Atheists of Florida, Inc., 269 So. 3d 656, 659 (Fla. 2d DCA 2019), quoting Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).

Plaintiff also asserts a claim for injurious falsehood, which has five elements: "(1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood." Bothmann v. Harrington, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984).

"The gist of the tort of injurious falsehood is the intentional interference with another's economic relations." Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A., 742 So. 2d 381, 386 (Fla. 4th DCA 1999). Injurious falsehood is a group of torts interchangeably called slander of title, disparagement of property, or trade libel. Each defense available to a defamation claim is equally available in an injurious falsehood claim. Sailboat Key, Inc. v. Gardner, 378 So. 2d 47, 49 (Fla. 3d DCA 1979) quoting W. Prosser, Law of Torts (4th Ed. 1971, s 114 at 777-778) (This tort "never has been greatly favored by the law," and is subject to "to all privileges recognized both in cases of personal defamation and in those of other types of interference with economic advantage."); see Collier County Pub. Co., Inc. v. Chapman, 318 So. 2d 492, 494 (Fla. 2d DCA 1975) (citing Prosser for injurious falsehood).

Overlaying both defamation and injurious falsehood is the requirement for actual malice. General Flynn candidly concedes that he is a "public figure" for defamation analysis [DIN 68, p. 10; DIN 69 p. 8]. There can be no dispute that the United States Supreme Court in New York Times v. Sullivan, 376 U.S. 254 (1964), directed that a public figure defamation plaintiff must demonstrate actual malice to overcome the protections of the First Amendment. Mastandrea v. Snow, 333 So. 3d 326, 328 (Fla. 1st DCA 2022). Actual malice is defined as "as knowing the statements were false at the time they were made or making the statements with a reckless disregard of the truth. Id. at 327-328; Readon v. WPLG, LLC, 317 So. 3d 1229, 1235 (Fla. 3d DCA 2021). Actual malice must be shown by clear and convincing evidence. Dockery v. Florida Democratic Party, 799 So. 2d 291, 294 (Fla. 2d DCA 2001).

The Court is aware there is criticism of this "almost impossible" burden as being a judicial policy decision instead of an appropriate application of constitutional law. E.g., Mastandrea, 333 So. 3d at 328-334 (B.L. Thomas, J., concurring). The Court need not wade into that discussion, though, as New York Times remains good law and the Court is required to follow it.

## 2.
## The Anti-SLAPP Statute

The Florida Legislature, as a matter of public policy, prohibits what it calls "Strategic Lawsuits Against Public Participation," or "SLAPP." § 768.295, Fla. Stat. That statute explains state policy in relevant part as follows:

> It is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues . . . as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution. It is the public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues. Therefore, the Legislature finds and declares that prohibiting such lawsuits as herein described will preserve this fundamental state policy [and] preserve the constitutional rights of persons in Florida . . . . It is the intent of the Legislature that such lawsuits be expeditiously disposed of by the courts.

§ 768.295(1), Fla. Stat.

In addition to stating public policy, the Legislature specifically prohibited SLAPP suits:

> A person or governmental entity in this state may not file or cause to be filed, through its employees or agents, any lawsuit, cause of action, claim, cross-claim, or counterclaim against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue, or right to peacefully assemble, to instruct representatives of government, or to petition for redress of grievances before the various governmental entities of this state, as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.

§ 768.295(3), Fla. Stat.

The Legislature directed an "expeditious resolution" of a claimed SLAPP suit "at the earliest possible time" with specific procedures identified in the statute. § 768.295(4), Fla. Stat.

"Free speech in connection with public issues" is a legislatively defined expression and it "means any written or oral statement that is protected under applicable law and is made before a governmental entity in connection with an issue under consideration or review by a governmental entity, or is made in or in connection with a play, movie, television program, radio broadcast, audiovisual work, book, magazine article, musical work, news report, or other similar work." § 768.295(2)(a), Fla. Stat.

The Second District has made clear that a trial court can consider a claimed violation of the anti-SLAPP statute under alternate theories of a motion to dismiss or summary judgment brought in a single motion. Gundel v. AV Homes, Inc., 264 So. 3d 304 (Fla. 2019).

Filed 01/30/2024 08:39 AM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL

The Gundel court explained the statutory procedure places the "initial burden on the SLAPP defendant to set forth a prima facie case that the Anti-SLAPP statute applies" and, once done, the burden shifts "to the claimant to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit[.]'" Gundel, 264 So. 3d at 314. As Gundel made clear, and reiterated in Baird v. Mason Classical Academy, Inc., 317 So. 3d 264, 268 (Fla. 2d DCA 2021); and Davis v. Mishiyev, 339 So. 3d 449, 452-453 (Fla. 2d DCA 2022), the trial court must apply the statutory test to motion to dismiss, not the "normal" motion to dismiss four-corners' standard. In fact, the trial court errs if it applies the traditional four-corners review to determine if the complaint states a cause of action. Gundel, 264 So. 3d at 314; Baird, 371 So. 3d at 268; and Davis, 339 So. 3d at 453.

The Court understands other Florida district courts disagree with the Second District's approach. Lam v. Univision Communications, Inc., 329 So. 3d 2021 (Fla. 3d DCA 2021) (certified conflict with Gundel on appropriateness of heightened burden); Johnson v. Fischer, 369 So. 3d 354 (Fla. 5th DCA 2023) (certified conflict with Gundel on appropriateness of certiorari review); and WPB Residents for Integrity in Government, Inc. v. Materio, 284 So. 3d 555 (Fla. 4th DCA 2019) (certified conflict with Gundel on the same basis as Materio). And the Court observes that General Flynn correctly acknowledged Gundel but then argued Gundel did not obviate the regular motion to dismiss standard and the statements in Gundel are dicta [DIN 68, pp. 2-6; DIN 69, pp. 3-6]. The Court declines General Flynn's invitation to view the holdings in Gundel, Baird, and Davis as dicta. The Court is within the Second District's territorial boundary, and the Court will apply the Second District's precedent. Pardo v. State, 596 So. 2d 665, 666-667 (Fla. 1992) (where there is interdistrict conflict, trial court must apply its district court's holding).

Finally, with respect to the anti-SLAPP statute, the Court is mindful of the Second District's remarks concerning jumbling the analysis of motions to dismiss and summary judgments in the context of anti-SLAPP claims. McQueen v. Baskin, 2023 WL 7929535, *4 (Fla. 2d DCA Nov. 17, 2023) (identifying concern of a "unitary motion that asserted both rules without delineating which arguments were for dismissal and which were for summary judgment). The Court will (attempt to) be clear as to what and how it considered the arguments and on what basis or bases the Court rules.

### 3.
### Mr. Wilson's Motion

Mr. Wilson filed a motion to dismiss and alternative motion for summary judgment. The Court resolves Mr. Wilson's motion on the basis of his alternative summary judgment motion.

Mr. Wilson executed an affidavit as well as sought judicial notice of numerous articles, editorials, court opinions, court filings, General Flynn's presidential pardon, wire reports, declassified intelligence assessments, and various social media posts [DINs 63, 64]. The Court accepts judicial notice of the existence of, and contents of, the items requested by Mr. Wilson. The Court also notes General Flynn waived the 40-day requirement for summary judgment evidence [DINs 73, 74]. General Flynn did not provide any rebuttal evidence.

General Flynn's two isolated complaints with Mr. Wilson in the Second Amended Complaint pale in comparison to the myriad of complaints General Flynn raised concerning Mr. Stewartson's numerous comments. And the Court is aware of Mr. Stewartson's concern that Mr. Wilson was improperly joined to defeat federal court jurisdiction. The Court does not concern itself with the Plaintiff's decision in the original complaint (but not included in subsequent complaints) to voluntarily limit damages or in Plaintiff's choice of Defendants. The Court is competent to address the merits of this case just like a federal court sitting in diversity. Whether a Defendant removes a case to federal court or not is outside this Court's province. The Court will adjudicate the case before it for however long the Court has jurisdiction to do so.

Had Mr. Wilson remained a party to this lawsuit, though, the Court would have strongly considered severing General Flynn's claims against Mr. Wilson from those of Mr. Stewartson given the substantial disparity in breadth and number of allegations. See Alanco v. Brystrom, 544 So. 2d 217, 218 (Fla. 3d DCA 1989) (under Florida Rule of Civil Procedure 1.250(a), misjoinder is not a ground for dismissal; rather, severance would be appropriate). Because the Court is terminating Mr. Wilson's involvement in this lawsuit, the Court need not determine, finally, the question of severance.

The two statements General Flynn points to in his Second Amended Complaint made by Mr. Wilson are: (1) a post calling General Flynn a Putin employee; and (2) a retweet that General Flynn is Q. The Court addresses each.

*First*, General Flynn complains about a February 24, 2022, post by Mr. Wilson that reads in its entirety: "Putin employee Mike Flynn[.]" [DIN 59, p. 22, ¶67]. The Russian Federation invaded Ukraine on February 22, 2022. [DIN 63, p. 50, Mr. Wilson Aff. p. 2, ¶9].

As General Flynn set forth in his Second Amended Complaint, Mr. Wilson's "Putin employee Mike Flynn" comment was to another person's comment that commented on General Flynn's publicly posted letter dated February 24, 2022. General Flynn in his original letter—which is included in the Second Amended Complaint—publicly denounced Russia's invasion into Ukraine but suggested there were policy failures by the President of the United States and his Administration's foreign policy that encouraged Russia's aggression. General Flynn observed "we continue to demonize Russia" and explained "President Putin calculated this strategic, historic, and geographic play and made the decision to move, and he did."

Mr. Wilson in his materials pointed to news accounts that in December 2015, the Russian Federation's state sponsored television network RT paid General Flynn $45,000 plus expenses for General Flynn to speak at RT's 10th anniversary gala in Moscow. A photo from that event depicts General Flynn seated next to Russian President Vladimir Putin. Thirteen months later, President Trump appointed General Flynn as the U.S. National Security Advisor.

*Second*, General Flynn points to Mr. Wilson's May 14, 2023, retweet by Mr. Stewartson, which original tweet included the statement: "Also, FYI, Mike Flynn is 'Q'." [DIN 59, p. 37, ¶87]. Mr. Stewartson's original tweet included either a screenshot of, or link to, Mr. Wilson's appearance on an MSNBC show that seemingly included a reference to General Flynn, although the TV show's context is not clear from Mr. Stewartson's post. Mr. Stewartson identified a story

Mr. Stewartson ran concerning General Flynn. Mr. Stewartson then included the purported defamatory comment: "FYI, Mike Flynn is 'Q'."

General Flynn suggests by calling him "Q" is the same as saying that he is the leader of QAnon, which General Flynn implies that it is designed to subject him to ridicule. The Court will accept for this motion the construction that "Q" denotes leadership in the QAnon movement, and it has a negative connotation. The Court, therefore, for this motion will not consider "Q" to mean something like "Q" the Quartermaster from the James Bond movie franchise, or like "Q" from *Star Trek: The Next Generation*, who was a nearly omnipotent person (and species) capable of altering time, space, and reality. In his materials, Mr. Wilson pointed to several articles concerning QAnon, generally, and General Flynn's potential association with it, specifically.

Under the anti-SLAPP statute, Mr. Wilson had the initial burden of demonstrating a prima facie case that the statute applies. And he did. Mr. Wilson easily demonstrated substantial national discussion concerning the Russian Federation, Vladmir Putin, QAnon, and General Flynn's interactions or presumed interactions with them. These are public issues of the highest order that the First Amendment is designed to protect, and the dialogue back-and-forth implicates free speech. Because Mr. Wilson made his required initial showing, it became incumbent on General Flynn to "to demonstrate that the claims are not 'primarily' based on First Amendment rights in connection with a public issue and not 'without merit.'" Gundel, 264 So. 3d at 314.

General Flynn has not done so with respect to Mr. Wilson.

General Flynn contends that the primary purpose of his lawsuit against Mr. Wilson "is to seek compensation for Defendant's harmful and malicious lies about General Flynn, an American hero who served this country for 33 years." [DIN 69, p. 7]. There was no affidavit supporting the attorney's assertion, as would be permitted by both section 768.295(4) ("The claimant . . . shall thereafter shall file a response and any supplemental affidavits."), and rule 1.510(c)(4). An attorney's assertion is not evidence. E.g.Hitt v. Homes & Land Brokers, Inc., 993 So. 2d 1162, 1166 (Fla. 2d DCA 2008) (attorney's unsworn statements do not establish facts in the absence of stipulation, and trial judges cannot rely on them for the basis of factual determinations). This basis alone is sufficient to conclude General Flynn did not meet his burden.

Additionally, the Court notes that the Second Amended Complaint seeks both damages and injunctive relief [DIN 59, p. 58]. Seeking to restrain speech at its core is antithetical to the First Amendment. And it undercuts a claim that the primary purpose is to seek damages; it suggests the purpose is to silence speech.

Further, General Flynn did nothing to establish that Mr. Wilson's speech was "not without merit" or otherwise not entitled to protection. General Flynn in his Second Amended Complaint contended that Mr. Wilson's four-word post and one retweet was designed "to drive viewers and donations to his political groups, such as The Lincoln Project" that raised over $87 million through donations. [DIN 59, p. 42, ¶¶106-107]. While that conclusion does not reasonably follow from the two isolated posts, even if it did, the absence of any proof is fatal to General Flynn's burden under the anti-SLAPP statute. The Court would have assumed General

Flynn would explain or deny the content of the numerous media stories from which Mr. Wilson was able to make the statements he did. But he did not.

Mr. Wilson is entitled to summary judgment under the anti-SLAPP statute. And the Court resolves Mr. Wilson's motion primarily on that basis.

Even in the absence of the anti-SLAPP statute, though, Mr. Wilson would still be entitled to summary judgement under the traditional standard because Mr. Wilson demonstrated an entitlement to summary judgment and General Flynn failed to demonstrate the existence of a disputed material issue of fact. Florida has a new summary judgment statement, and in moving towards the federal summary judgment standard, the Florida Supreme Court made three overarching points:

> First, those applying new rule 1.510 must recognize the fundamental similarity between the summary judgment standard and the directed verdict standard. Both standards focus on whether the evidence presents a sufficient disagreement to require submission to a jury. And under both standards the substantive evidentiary burden of proof that the respective parties must meet at trial is the only touchstone that accurately measures whether a genuine issue of material fact exists to be tried.
>
> Second, those applying new rule 1.510 must recognize that a moving party that does not bear the burden of persuasion at trial can obtain summary judgment without disproving the nonmovant's case. Under Celotex [Corp. v Catrett, 477 U.S. 317 (1986)] and therefore the new rule, such a movant can satisfy its initial burden of production in either of two ways: If the nonmoving party must prove X to prevail at trial, the moving party at summary judgment can either produce evidence that X is not so or point out that the nonmoving party lacks the evidence to prove X. A movant for summary judgment need not set forth evidence when the nonmovant bears the burden of persuasion at trial.
>
> And third, those applying new rule 1.510 must recognize that the correct test for the existence of a genuine factual dispute is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Under our new rule, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. In Florida it will no longer be plausible to maintain that the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial, stops the inquiry and precludes summary judgment, so long as the slightest doubt is raised.

In re Amendments to Florida Rule of Civil Procedure 1.510, 317 So. 3d 72, 75–76 (Fla. 2021) (internal citations, parentheticals, and quotations omitted).

Here, Mr. Wilson came forward with evidence demonstrating a factual basis from which he made the "Putin employee" and "Q" comments. Perhaps General Flynn does not receive a w-2 from Vladmir Putin, but he did receive payment from a Russian Federation-controlled entity. The "gist" and "sting" of the comment is not substantially untrue. Kieffer, 369 So. 3d at 659. Perhaps General Flynn is not the mysterious "Q", but numerous news articles tie a close link between he and the QAnon movement. Mr. Wilson's retweet of Mr. Stewartson's original tweet, at least as it relates to the comment, "FYI, Mike Flynn is 'Q'." is unactionable rhetorical hyperbole.

At bottom, Mr. Wilson demonstrated that both the falsity element and the acting on the falsity element cannot be met by General Flynn at trial. Having done so, General Flynn was required to come forward with evidence to dispute those elements. Mr. Wilson's comments may not have been polite or fair. The First Amendment, though, does not require either politeness or fairness. Pullum v. Johnson, 647 So 2d 254, 258 (Fla. 1st DCA 1994).

Alternatively, Mr. Wilson is entitled to final summary judgment without resort to the anti-SLAPP statute.

### 4.
### Mr. Stewartson's Motion

Mr. Stewartson filed a motion to dismiss. He included numerous news accounts, opinions pieces, an Eventbrite invitation, several of General Flynn's tweets, as well as General Flynn's March 10, 2022, deposition taken by a congressional committee. Mr. Flynn did not add any materials beyond those contained in his Second Amended Complaint.

The Court acknowledges that the Court could not grant the motion to dismiss as to Count 1 (defamation) by applying the traditional "four-corners" motion to dismiss standard. Count 2 (injurious falsehood), is a different story, as Plaintiff did not allege any special damages proximately caused by the published falsehood. That omission is fatal to Count 2.

Mr. Stewartson's motion to dismiss is not judged under the normal four-corners construct. The Court must apply the statutory anti-SLAPP test as outlined in Gundel. As explained above, the Court must do more than simply evaluate the four corners of the Second Amended Complaint.

General Flynn at paragraph 46 of his Second Amended Complaint outlines 14 categories that are allegedly defamatory. He then in paragraphs 50-66, 68-89, 92-96, catalogue the specific statements. The Court has gone through the allegations as well as Mr. Stewartson's motion and cited materials.

Based on that review, the Court concludes that Defendant Stewartson made the required initial showing under the anti-SLAPP statute as construed by Gundel with respect to most, but not all, of the allegations. General Flynn did not present any counterevidence, and he otherwise failed to meet his burden. Thus, the following allegations must be dismissed and stricken from General Flynn's claim against Defendant Stewartson: 46a, 46b, 46c, 46d, 46e, 46f, 46g, 46h, 46k, 46m, 50, 51, 52, 53, 54, 55, 56, 57, 59, 60, 61, 62, 63, 64, 66, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 85, 87, 88, 89, 92, 93, 94, 95, and 96.

There were four allegations, though, that Mr. Stewartson failed to make a prima facie showing that his comments constitute "free speech in connection with public issues." Without making that initial showing, the burden outlined in Gundel never shifted to General Flynn. As such, those four allegations remain in General Flynn's defamation Count 1 against Mr. Stewartson:

► 46i – General Flynn is a "Nazi" (¶58);

► 46j – General Flynn "wants a second Holocaust" (¶65);

► 46l – General Flynn "torture[d] prisoners" (¶83); and

► 46n – General Flynn "literally tried to murder Mike Pence" (¶84).

"The character of these statements, if they are false, would be quintessentially defamatory." McQueen v. Baskin, 2023 WL 7929535 (Fla. 2d DCA Nov. 17, 2023) citing Richard v. Gray, 62 So. 2d 597, 598 (Fla. 1953) (describing situations where a publication is defamatory per se). The first two statements tend to subject General Flynn to disgrace. The third and fourth tend to state General Flynn committed an infamous crime.

With respect to the first two, Mr. Stewartson purportedly stated that General Flynn "is a Nazi" (¶58) and that he "wants a second Holocaust. Truly." (¶65) The Court is aware of Judge Singhal's decision in Trump v. Cable News Network, Inc., 2023 WL 4845589 (S.D. Fla. Jul. 28, 2023), in which the court dismissed a defamation claim involving statements made on CNN by a CNN commentator about President Trump's purported "Big Lie" concerning election interference. In that case, President Trump contended references to "Big Lie" suggested that President Trump was like the Third Reich's Joseph Goebbels, who professed the sentiment: "If you tell a lie big enough and keep repeating it, people will eventually come to believe it." President Trump argued that this means that voters would think of President Trump as "Hitler-like in any future political role." In dismissing the lawsuit, the court concluded the Big Lie statements in the context made on the CNN show were statements of opinion, not fact, which is not actionable.

In the current case, Mr. Stewartson is not using an analogy like the CNN employees did in Trump. Instead, Mr. Stewartson appears to be stating a fact—that General Flynn is a Nazi and that he wants to systematically eradicate an entire race of people based on their religious beliefs. Without further context, Mr. Stewartson's two comments cannot be conclusively determined to be statements of opinions (including rhetorical hyperbole) instead of statements of fact. If the

former, a defamation claim cannot lie. If the later, however, the Court can potentially see a construction of these statements that could support a finding that they were made with actual malice.

Mr. Stewartson had the initial burden under <u>Gundel</u> to show that application of the anti-SLAPP statute. At present, he has not demonstrated these comments qualify as free speech in connection with a public issue or is otherwise protected speech. Thus, the character of these two comments cannot be resolved on the motion to dismiss.

Two last two comments suggest General Flynn committed infamous crimes. The first one was "Mike Flynn employed Jack Posobiec to torture prisoners in Guantanamo while Flynn was head of @Defenseintel." (¶83). The Court did not find any information in Mr. Stewartson's motion to dismiss that provided any context for this comment. As it was Mr. Stewartson's initial burden, the failure to present any information results in the conclusion that he failed to make his initial showing as to the applicability of the anti-SLAPP statute to this defamation claim.

The second comment was "Mike Flynn literally tried to murder Mike Pence with Qanon." (¶84). Effectively, this comment states General Flynn attempted to commit first degree murder by attempting to assassinate the sitting Vice President of the United States. The Court cannot understand how that is rhetorical hyperbole and not a statement of fact. The Court is aware from the materials Mr. Stewartson supplied that General Flynn took the Fifth Amendment on several questions asked by the Select Committee concerning the January 6, 2021, events at the Capitol. At this stage of the litigation, the Court concludes that the submitted materials—while discussing January 6 generally—are insufficient to demonstrate a prima facia basis that the anti-SLAPP statute applies to a claim of defamation that General Flynn literally tried to murder the Vice President.

IT IS THEREFORE ORDERED AND ADJUDGED:

1. Defendant Wilson's Motion to Dismiss or in the Alternative Motion for Summary Judgment Pursuant to Section 786.265, Florida Statutes [DIN 63] is granted. The Court grants Mr. Wilson's motion both under the anti-SLAPP procedure established by section 786.265 as well as the "normal" summary judgment procedure under rule 1.510.

2. Plaintiff Michael T. Flynn shall take nothing by his action against Defendant RICK WILSON. Defendant RICK WILSON shall go hence without day. The Court reserves jurisdiction to award attorney fees or costs or both, if any, upon a timely motion.

3. Defendant Jim Stewartson's Motion to Dismiss Plaintiff's Second Amended Complaint [DIN 62] is granted in part and denied in part.

4. The Court dismisses Count 2 of the Second Amended Complaint in its entirety based on General Flynn's failure to allege special damages. This dismissal is

Filed 01/30/2024 08:39 AM - Karen E. Rushing, Clerk of the Circuit Court, Sarasota County, FL

under the normal four-corners analysis. As injurious falsehood seeks damages for damage to property, the Court concludes that allowing amendment would be futile as the allegations here are more traditionally considered defamation. For that reason, the Count 2 dismissal is with prejudice with no leave to amend.

5. The Court dismisses that portion of Count 1 of the Second Amended Complaint based on, and otherwise strikes, the following allegations: 46a, 46b, 46c, 46d, 46e, 46f, 46g, 46h, 46k, 46m, 50, 51, 52, 53, 54, 55, 56, 57, 59, 60, 61, 62, 63, 64, 66, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 85, 87, 88, 89, 92, 93, 94, 95, and 96. The dismissal and striking of these allegations is required by the anti-SLAPP statute as construed by Gundel and its progeny.

6. The Court denies that portion of Count 1 of the Second Amended Complaint based on the following allegations: 46i, 46j, 46l, 46n, 58, 65, 83, and 84.

7. Defendant Stewartson shall answer the remaining allegations of the Second Amended Complaint within 20 days of the date of this Order.

8. Nothing in this ruling impacts the status of Defendant MeidasTouch, LLC.

DONE AND ORDERED in Sarasota, Sarasota County, Florida, on January 30, 2024.

e-Signed 1/30/2024 8:39 AM 2023 CA 004264 NC

**HUNTER W CARROLL**
Circuit Judge

### SERVICE CERTIFICATE

On January 30, 2024, the Court caused the foregoing document to be served via the Clerk of Court's case management system, which served the following individuals via email (where indicated). On the same date, the Court also served a copy of the foregoing document via First Class U.S. Mail on the individuals who do not have an email address on file with the Clerk of Court.

GEORGE KARL RAHDERT
535 CENTRAL AVE
SAINT PETERSBURG, FL  33701

JONATHAN R HUFFMAN
225 WATER STREET

SUITE 1800
JACKSONVILLE, FL  32202

JARED J ROBERTS
717 KING ST STE 200
ALEXANDRIA, VA  22314

GEORGE A D THURLOW
535 CENTRAL AVE STE 200
ST. PETERSBURG, FL  33701

LEONARD M COLLINS
GRAYROBINSON, P.A.
301 S. BRONOUGH STREET, SUITE 600
TALLAHASSEE, FL  32301